## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EVA MARIE GUTIERREZ,

       Plaintiff,

v.                                                                    No. 1:21-cv-00348-JHR

KILOLO KIJAKAZI, *Acting Commissioner*
*of Social Security*,

       Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Eva Marie Gutierrez's Motion to Reverse or Remand

Administrative Agency Decision with Memorandum in Support.  [Doc. 22].  Pursuant to 28

U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate

Jerry H. Ritter resolving Gutierrez's challenge to the Commissioner's Final Decision on her

application for Social Security benefits and entering Final Judgment in this appeal.  [Docs. 27–

29].[1]  Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court

grants Gutierrez's motion, reverses the Commissioner's Final Decision denying Gutierrez

benefits, and remands this case to the agency for rehearing.

### I.  INTRODUCTION

Administrative Law Judges ("ALJs") considering a claimant's application for disability

benefits generally must follow a five-step sequential analysis.  After the first three steps, they

must determine the totality of what the claimant can do despite her limitations, called her

"residual functional capacity."  Every limitation evidenced in the record must be considered

---

[1] Documents 27–28 are text-only docket entries viewable on the CM/ECF system.

when the ALJ assesses residual functional capacity, even if the ALJ believes some of those limitations are minor.

Although Gutierrez raises several grounds to argue for reversal, the Court reverses and remands on just one—that the ALJ below did not address one of Gutierrez's evidenced limitations, and that the evidence was strong enough that considering that limitation may have made a difference.  It is not for this Court to decide whether Gutierrez is disabled, so the case is remanded for an ALJ to consider the case again in light of this Court's findings.

## II.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff Eva Marie Gutierrez protectively applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI on January 14, 2019, claiming disability beginning August 3, 2018.  *AR* at 53, 202.[2]  The Administration denied Gutierrez's applications initially on May 23, 2019 (*AR* at 84) and on reconsideration on October 2, 2019.  *AR* at 96–99.  Gutierrez was then granted a hearing before ALJ Mark M. Swayze.  *AR* at 162–66.

Gutierrez primarily claims that she is disabled because of her mental status.  She was diagnosed with and treated for depressive disorder and anxiety in 2019 and post-traumatic stress disorder in 2020.  *AR* at 326, 422.  Although her initial benefits application listed both physical and mental impairments,[3] Gutierrez mostly described mental functional limitations in her adult function report and later in her hearing.  *See AR* at 62–64, 246–52, 264–71.  Post-traumatic stress disorder and anxiety were chief among her concerns.  *See AR* at 62.  She alleged that crowds triggered panic attacks and caused her to flee to a public bathroom or her car.  *AR* at 62.  Smells

---

[2] Document 17 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

[3] In her April 1, 2019 Disability Report, Gutierrez stated that the following medical conditions limited her ability to work:  polycythemia, type 2 diabetes, anxiety, panic attacks, and thyroid disease.  *AR* at 225.

and sounds which reminded her of sexual and physical abuse in her childhood also triggered anxiety and panic attacks, which she said she experienced every day. *AR* at 63. Depression, meanwhile, made it difficult, but not impossible, for Gutierrez to get up in the morning, bathe, and perform housework. *AR* at 71–72. These complaints were consistent with records of Gutierrez's treatment, including medication and psychotherapy. *See AR* at 421–45 (detailing Gutierrez's psychotherapy progress and medication use). That said, Gutierrez sometimes displayed normal psychiatric status during medical examinations. *See AR* at 328, 337, 394.

Gutierrez also alleged that headaches contributed to her inability to work. She has described having headaches daily, during which she says she experiences pain at a level of 8–9 on a 1–10 scale, blurred vision, dizziness, insomnia, phonophobia, photophobia, and tinnitus. *AR* at 62, 261, 335. To treat her headaches, Gutierrez takes Topiramate, an anticonvulsant. *AR* at 338. Gutierrez suggests her anxiety contributes to her headaches and has described how they coincide with panic attacks and are exacerbated by stress. *See AR* at 62, 335; [Doc. 22, pp. 5, 13]. Medical records suggest that the headaches are a symptom of hypoglycemia[4] associated with Gutierrez's type 2 diabetes mellitus. *See AR* at 328–29.

Gutierrez's hearing before ALJ Swayze took place on August 14, 2020. *AR* at 47. Before and during her hearing, Gutierrez asked ALJ Swayze to order a consultative examination to evaluate and give opinions on her mental status. *AR* at 54, 299. ALJ Swayze ultimately chose not to order the consultative examination and his decision suggests he believed the record had enough information for him to decide whether Gutierrez was disabled without one. *See AR* at 19–24. On August 28, 2020, ALJ Swayze issued a decision denying benefits. *AR* at 13.

---

[4] "Hypoglycemia" refers to low blood sugar and the host of symptoms which can result from it. *See* Stedmans Medical Dictionary, *hypoglycemia*, STEDMANS 428850, Westlaw (database updated Nov. 2014). Dizziness, confusion, headache, and inability to concentrate are common symptoms. *Id.*

3

Gutierrez sought review of the unfavorable decision from the Appeals Council.  *AR* at

199–201.  In her application for review, Gutierrez included treatment records from the Family

Workshop Counseling Center as additional evidence that her mental impairments are disabling.

*See AR* at 33–46.  The records are consistent with others showing the existence of Gutierrez's

mental impairments but also contain some benign findings.  *See generally AR* at 33–46.  The

Appeals Council denied review on February 9, 2021, making ALJ Swayze's decision final.[5]  *AR*

at 1–4.  Gutierrez timely appealed.  [Doc. 1].

On February 16, 2022, Gutierrez moved to reverse the Commissioner's decision and

remand for rehearing.  [Doc. 22].  This case was assigned to me on May 6, 2022, and the parties

consented to my presiding. [Docs. 26–29].  The Commissioner responded on May 18, 2022, and

Gutierrez replied on May 27, 2022, completing briefing.  [Docs. 30–32].

## III.   THE COMMISSIONER'S FINAL DECISION

Claimants seeking disability benefits must establish that they are unable to engage in

"any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

---

[5] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  20 C.F.R. § 422.210(a);  *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

§ 404.1505(a).[6]  The Administration must apply a five-step analysis to determine eligibility for

benefits.  20 C.F.R. § 404.1520(a)(4).[7]

At step one of the sequential analysis, ALJ Swayze found that Gutierrez met the insured

status requirements of the Social Security Act through December 31, 2023 and had not engaged

in substantial gainful activity since her alleged onset date of August 3, 2018.  *AR* at 18–19.  At

step two, he found that Gutierrez had three severe impairments:  depression, anxiety, and post-

traumatic stress disorder.  *AR* at 19.  ALJ Swayze also noted that evidence established Gutierrez

has diabetes, but that it is "stable and asymptomatic," thus non-severe.  *AR* at 19.  He also

acknowledged that Gutierrez complained of headaches but stated that they "were symptoms of

diabetes mellitus" and that the record "fails to include the evidence needed to establish a primary

headache disorder."  *AR* at 19.  Gutierrez's headaches were thus found non-severe as well.  *AR* at

19.  At step three, ALJ Swayze found that Gutierrez's impairments, individually and in

combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R.

Title 20, Part 404, Subpart P.  *AR* at 19.

When a claimant does not meet a listed impairment, the ALJ must determine the

claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  Residual functional capacity

is a multidimensional description of the work-related abilities a claimant retains despite her

impairments.  *Id.* at § 404.1545(a)(1).  It "does not represent the *least* an individual can do

despite his or her limitations or restrictions, but the *most*."  Social Security Ruling ("SSR") 96-8p

---

[6] Regulations for determining whether a claimant is disabled for purposes of for both disability insurance benefits and supplemental security income are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs disability insurance while Part 416 governs supplemental security income.  The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

[7] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

at *Definition of RFC*.[8]  ALJ Swayze determined that Gutierrez could perform a "full range of work at all exertional levels," but with the following non-exertional restrictions:

> She can understand, carry out, and remember more than simple, but less than complex, 3–4 step instructions.  She is unable to perform tasks involving multi-layer decision-making or supervisory tasks.  She can perform job tasks independently, appropriately and at a consistent pace in goal-oriented work, in which job tasks do not have to be completed within a strict time deadline.  She can interact occasionally with supervisors and co-workers, but she must have no contact with the public.  The claimant can respond appropriately to occasional routine changes in work setting.

*AR* at 20–21.  ALJ Swayze stated he reached these conclusions after considering all of Gutierrez's symptoms and the consistency of those symptoms with all record evidence as required by 20 C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p.  *AR* at 21.  Although ALJ Swayze supported his findings with a discussion about Gutierrez's medical records and statements reflecting her history of depression, anxiety, and post-traumatic stress disorder, he did not discuss Gutierrez's headaches and whether they affected her ability to function.  *See AR* at 21–24.

At step four, ALJ Swayze found that Gutierrez is unable to perform any past relevant work.  *AR* at 25.  At step five, however, he found that Gutierrez was able to perform other jobs which exist in significant numbers in the national economy.  *AR* at 25.  Because he found that Gutierrez can perform "substantial gainful activity" despite her impairments, ALJ Swayze determined that Gutierrez is not disabled and denied benefits.  *AR* at 26.

## IV.    STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were

---

[8] All SSRs can be accessed free of charge at https://www.ssa.gov/OP_Home/rulings/rulings.html.  Pin citations to SSRs refer to headings in the SSR because the Administration does not paginate its rulings.

applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)).  A deficiency in either area is grounds for remand.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The Commissioner's findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance.  *See id.*; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision is not based on substantial evidence if it is overwhelmed by other record evidence.  *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

V.   **PARTIES' ARGUMENTS**

a.   Duty to Develop the Record

Gutierrez first argues that ALJ Swayze did not develop the record enough and that this was reversible error.  [Doc. 22, pp. 8–10].  ALJs, she says, have a duty to develop the record so that they can accurately assess whether a claimant is disabled.  *Id.* at 8.  One way ALJs can do this is by ordering a consultative examination of the claimant by a medical professional who will opine on how the claimant's medical conditions affect the claimant's functional capacities.  *Id.*; 20 C.F.R. § 404.1519a(b).  In Gutierrez's view, the duty to develop the record implicitly obligates ALJs to order these examinations when there is enough evidence to suggest "a reasonable possibility that a severe impairment exists[.]"  [Doc. 22, p. 8] (quoting *Calderwood v. Barnhart*, 1:02-cv-00890-BB-LCS, 2003 WL 27384839 at *6 (D.N.M. Aug. 8, 2003)).  She believes that standard is met here and thus the case should be remanded for the Administration to order a consultative examination assessing Gutierrez's mental status.  *Id.* at 8–9.  Gutierrez

further argues that ALJ Swayze provided a medical opinion by relying almost solely on medical records, rather than expert medical opinion, and that this was also reversible error. *Id.* at 9–10.

The Commissioner disagrees for three reasons. First, she argues that the medical records ALJ Swayze relied upon were substantial evidence on which he could determine Gutierrez's mental residual functional capacity, thus he did not need a consultative examiner's opinion. [Doc. 30, pp. 6–7]. Second, the Commissioner points out that the regulation authorizing ALJs to order consultative examinations states only that ALJs "*may* purchase a consultative examination," suggesting that the duty to develop the record does not require them to be ordered. *Id.* at 7 (quoting 20 C.F.R. § 404.1519a(b)) (emphasis added in briefing). Finally, the Commissioner stresses that it is the sole duty of ALJs, not medical experts, to determine a claimant's residual functional capacity. *Id.* at 7–8. In her view, ALJ Swayze was thus permitted to rely solely on medical records and other non-opinion evidence to determine Gutierrez's mental residual functional capacity and did not provide an impermissible medical opinion. *Id.* at 7–8.

b. <u>Mental Residual Functional Capacity</u>

Gutierrez next argues that ALJ Swayze legally erred by failing to follow the correct procedure for evaluating her mental residual functional capacity. [Doc. 22, pp. 10–15]. The argument has two parts. First, she says that ALJs must perform a "function-by-function" analysis of a claimant's work-related abilities. *Id.* at 11. When claimants have mental limitations, Gutierrez argues that the ALJ must "itemiz[e] various functions contained within the broad categories found in paragraphs B and C of the adult mental disorders" listed at Appendix 1, § 12.00E. *Id.* ALJ Swayze did not do this even though he found Gutierrez moderately limited in every paragraph B category; therefore, she says, he erred.

In the second part of her argument, Gutierrez says that ALJ Swayze should have also considered how her headaches affect her ability to work. *Id.* at 13–15. As discussed above, ALJ Swayze noted that Gutierrez complained of headaches, but found that they were symptoms of Gutierrez's non-severe diabetes and thus were not a severe impairment. *AR* at 19. Gutierrez says that the record has plenty of evidence other than her subjective complaints to prove that her headaches impaired her ability to work and that they should be considered apart from her non-severe diabetes. [Doc. 22, p. 14]. Therefore, it was error for ALJ Swayze not to consider them.

The Commissioner defends ALJ Swayze on both points. First, she argues that ALJs are not required to analyze claimants' abilities function-by-function. [Doc. 30, pp. 9–10]. Instead, she argues, it is good enough for ALJs to account for moderate mental impairments with more general limitations, such as restricting a claimant to "occasional, superficial interaction with the public[.]" *Id.* at 9–10 (citing *Whitney v. Saul*, 1:19-cv-00566-CG, 2020 WL 2489776 at *7–8 (D.N.M. May 14, 2020) (unpublished)). Second, the Commissioner argues that ALJ Swayze was correct to classify Gutierrez's headaches as a symptom of her non-severe diabetes and that, in any case, the evidence for her headaches being severe is so weak that considering them would not have made a difference. *Id.* at 11–12. The Commissioner thus asserts that ALJ Swayze did not reversibly err.

c.   New Evidence

Finally, Gutierrez argues that this case should be remanded so that new evidence can be considered. [Doc. 22, pp. 15–16]. As discussed above, Gutierrez submitted treatment records related to her mental status to the Appeals Council which were not submitted to ALJ Swayze and the Appeals Council chose not to consider them. *Id.* at 15; *AR* at 1–2. Gutierrez argues that these records were "new" evidence (within the legal meaning of that term) which the Appeals

Council was required to consider.  [Doc. 22, p. 15].  In response, the Commissioner argues that the Appeals Council was not required to consider the records because they did not have a "reasonable probability" of changing the outcome of the Administration's decision and were cumulative of other evidence.  [Doc. 30, pp. 12–13].

## VI.  <u>ISSUES PRESENTED</u>

(a) Whether ALJ Swayze reversibly erred by choosing not to order a consultative examination of Gutierrez's mental status.

(b) Whether ALJ Swayze reversibly erred by failing to provide a function-by-function analysis of Gutierrez's non-exertional capacities and ignoring the effects of Gutierrez's headaches on her residual functional capacity.

(c) Whether the Appeals Council reversibly erred by choosing not to consider the additional medical records submitted by Gutierrez.

## VII.  <u>ANALYSIS</u>

The Court finds that ALJ Swayze legally erred by failing to consider the limiting effects of Gutierrez's headaches.  This error cannot be found harmless and thus requires reversal and remand.  The Court does not address any other issues raised by Gutierrez because the Administration's reconsideration of the case based on this order may affect those grounds.

a.  <u>Failure to Consider Headaches</u>

i.  *Relevant Law*

As described above, when ALJs find that a claimant's impairments do not meet or equal any listed impairment at step three, they must assess the claimant's residual functional capacity based on all relevant evidence.  20 C.F.R. § 404.1520(e).  This means ALJs must consider the symptoms of all medically determinable impairments, including non-severe ones, to assess the

total limiting effects of those impairments on the claimant.  *Id.* at §§ 404.1545(a)(3), (e).  The regulations recognize that subjective symptoms, such as pain, can be uniquely limiting:

> Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis.

*Id.* at § 404.1545(e).  The regulations thus direct ALJs to consider various factors to evaluate how symptoms affect a claimant's ability to work, including the location, duration, frequency, and intensity of a symptom; factors which may precipitate or aggravate symptoms; and medications taken to alleviate symptoms.  *Id.* at §§ 404.1529(c)(3)(ii)–(iv).  This does not, however, mean that ALJs must write about every detail of every symptom alleged by the claimant – "merely technical omissions in the ALJ's reasoning do not dictate reversal."  *Keyes-Zachary*, 695 F.3d at 1166.

Headaches have received special attention from the Administration in recent years as a potentially disabling symptom.  Specifically, the Administration now recognizes "primary headache disorders" as a type of medically determinable impairment which may equal certain listings or significantly affect residual functional capacity.  *See* SSR 19-4p at *Introduction*.  A headache disorder is "primary" when "headaches occur independently and are not caused by another medical condition."  *Id.* at *What are primary headache disorders?*  "Secondary headaches," on the other hand, "are symptoms of another medical condition[.]"  *Id.*  A primary headache disorder, once established by objective medical evidence, is considered a medically determinable impairment apart from other impairments, while secondary headaches are considered a symptom of the underlying condition which causes them.  *Id.* at *How do we*

*establish a primary headache disorder as an MDI?*  A classification of a headache as secondary, however, does not render it irrelevant; rather, the ALJ "must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's [residual functional capacity]."  *Id.* at *How do we consider an MDI of a primary headache disorder in assessing a person's residual functional capacity?*

   ii. *Application*

  ALJ Swayze did not consider the effects of Gutierrez's headaches on her residual functional capacity and thus did not follow the regulations above.  At step two, he recognized that Gutierrez complained of headaches and found that they were a symptom of Gutierrez's diabetes.  *AR* at 19.  Medical records showing treatment for headaches and continued headache complaints outside of hearings support her statements.  *AR* at 261 (complaining of headaches), 302–05 (filling prescription for Topiramate), 328–29, 335–39.  ALJ Swayze was thus required to consider how headaches, a symptom of a medically determinable impairment, affected Gutierrez's residual functional capacity.  *See* 20 C.F.R. §§ 404.1529(c), 404.1545(e).  But ALJ Swayze's analysis of Gutierrez's residual functional capacity included no mention of headaches or the diabetic condition he found caused them.  *See AR* at 20–25.  Courts should not reverse the Administration's final decisions on mere technical errors or minor omissions, but completely ignoring a symptom which, according to the claimant, causes extreme daily pain simply violates the Administration's regulations.  This was legal error.

  ALJ Swayze's discussion at step two suggests that non-primary headaches can be ignored, but he misinterprets SSR 19-4p.  It may well be that Gutierrez's headaches are wholly a symptom of her diabetes, in which case she does not have a primary headache disorder.  *See* SSR 19-4p at *What are primary headache disorders?*  But this does not change the ALJ's obligation

to consider the effects of all medically determinable impairments on the claimant's residual functional capacity; the SSR says as much. *Id.* at *How do we consider an MDI of a primary headache disorder in assessing a person's residual functional capacity?* On remand, even if the ALJ determines that Gutierrez's subjective complaints about the limiting effects of her headaches are not consistent with medical and other evidence, he must nonetheless consider and explain how Gutierrez's headaches affect her residual functional capacity.

The Commissioner's arguments to defend ALJ Swayze's decision are unpersuasive. First, she suggests that Gutierrez may be exaggerating the effects of her headaches because "she did not list them as an impairment that limited her ability to work when she applied for disability[.]" [Doc. 30, p. 11]. Even if Gutierrez is overstating her symptoms, it is beside the point because ALJ Swayze's error was that he ignored them, not that he found her statements unconvincing. Next, she points to the fact that headaches were discussed in ALJ Swayze's step two analysis where he found that the headaches were caused by Gutierrez's non-severe diabetes. *Id.* This just points out the error – the ALJ found a medically determinable impairment, recognized that it caused symptoms evidenced in the record, and then ignored the effects of those symptoms on Gutierrez's ability to work. Finally, before arguing harmless error, the Commissioner asserts ALJ Swayze addressed Gutierrez's headaches by finding that the record did not "substantiate the claimant's allegations of incapacitating symptoms associated with anxiety and depression." *Id.* (quoting *AR* at 21). But the only sentences ALJ Swayze wrote about headaches recognized no link between Gutierrez's mental health conditions and her headaches; instead, he solely attributed the headaches to diabetes. *See AR* at 19. The Court cannot conclude from that discussion that ALJ Swayze considered Gutierrez's headaches as part

of her anxiety and depression symptoms.  The Court thus finds that ALJ Swayze legally erred by failing to consider the effects of Gutierrez's headaches on her residual functional capacity.

       b.  <u>Error was not Harmless</u>

The Administration's legal error, in the context of appeals under 42 U.S.C. § 405(g), is harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005).  The Court cannot find this error harmless under that standard.  The symptoms described by Gutierrez and supported by medical records could lead a reasonable factfinder to conclude that Gutierrez is disabled.  It is not hard to imagine how daily painful headaches, which sometimes cause blurred vision, dizziness, insomnia, phonophobia, photophobia, and tinnitus, would prevent someone from performing substantial gainful activity.  Such symptoms could require a worker to take unscheduled breaks which, as the vocational expert testified, would eliminate her from competitive employment.  *See AR* at 79–80.  On remand, the ALJ is not required to find Gutierrez disabled, but because he could, the error was not harmless. [9]

## VIII.    <u>CONCLUSION AND ORDER</u>

Evidence suggests that Gutierrez's headaches may significantly affect her ability to work. The Administration is not required to find that Gutierrez is disabled, or even that the condition causing her headaches is severe.  But even if her headaches are a symptom of a non-severe condition, whether and to what degree they affect Gutierrez's residual functional capacity must

---

[9] The Commissioner argues that ALJ Swayze's error was harmless by pointing to evidence which may suggest that Gutierrez's headaches were not a serious symptom.  [*See* Doc. 30, pp. 11–12].  On remand, the ALJ is invited to consider that evidence, and he may reach the conclusion suggested in the Commissioner's briefing.  But that evidence shows only a conflict in the record for the ALJ to resolve, not harmless error.  *See* 20 C.F.R. § 404.1520b(b).  Presented here, the argument is a post-hoc rationale the Court cannot consider.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that district courts cannot supply reasons for rejecting evidence when the ALJ erred by failing to consider that evidence).

be considered and explained by the ALJ.  Only the Administration may weigh that evidence, so remand is necessary.

       **IT IS THEREFORE ORDERED** that Plaintiff Eva Marie Gutierrez's Motion to Reverse or Remand Administrative Agency Decision, [Doc. 22], is **GRANTED** and the Commissioner's Final Decision in this case is **REVERSED.**

Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent